[Cite as *In re L.W.*, 2019-Ohio-1343.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| In Re: L.W., et al. | : | |
| | | No. 107708 |
| A Minor Child | : | |
| | | |
| [Appeal by D.B., Mother] | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 11, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD17918166 and AD17918167

*Appearances:*

Christina M. Joliat, *for appellant.*

Michael C. O'Malley, Prosecuting Attorney, and Timothy
W. Clary, Assistant Prosecuting Attorneys, *for appellee.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant-mother, D.B. ("Mother"), appeals from the decision of the Juvenile Division of the Cuyahoga County Court of Common Pleas (the "juvenile court") terminating her parental rights and granting permanent custody of her children to the Cuyahoga County Division of Children and

Family Services ("CCDCFS" or "the agency").[1]  Mother raises the following

assignments of error for review:

> 1. The trial court's order granting permanent custody to the agency was not based upon sufficient clear and convincing evidence, was against the manifest weight of the evidence, and it erred in finding permanent custody to be in the best interest of the child.
>
> 2.  The trial court erred in conducting the dispositional hearing only three days after the Guardian Ad Litem report was filed in violation of Loc.R. 18 of the Cuyahoga County Court of Common Pleas, Juvenile Division.

{¶ 2}  After careful review of the record and relevant case law, we affirm the

trial court's judgment.

## I.  Procedural and Factual History

{¶ 3}  Mother and C.W. ("Father") are the biological parents of the minor

children, L.W. (d.o.b. November 2, 2013), and S.W. (d.o.b. December 8, 2014).  In

May 2015, the children were adjudicated dependent and committed to the

temporary custody of CCDCFS in Cuyahoga J.C. Nos. AD-14912483 and AD-

14915289.  The children remained in the agency's custody until November 2017,

when the children were committed to the legal custody of their paternal

grandmother, S.H.[2]

---

[1] The children's biological father, C.W., appeals from the juvenile court's judgment in 8th Dist. Cuyahoga No. 107648.

[2] In February 2017, this court reversed the trial court's previous order that terminated Mother and Father's parental rights and placed L.W. and S.W. in the permanent custody of the agency.  *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657.  On remand, the children's paternal grandmother was granted legal custody.

**{¶ 4}** However, before the children could be placed in the paternal grandmother's home, she notified CCDCFS that she was no longer willing to care for the children. Based on this information, the agency immediately filed a complaint in December 2017, alleging that L.W. and S.W. were neglected and dependent children pursuant to R.C. 2151.03(A)(3) and 2151.04(D). The complaint further requested the court to grant a disposition of permanent custody to the agency based on Mother and Father's failure to comply with certain aspects of their respective case plans. Shortly thereafter, the court awarded emergency temporary custody of the children to the agency.

**{¶ 5}** With respect to Mother, the agency alleged that she has a substance abuse problem and mental health issues "which prevent her from providing adequate care for the children." The agency further alleged that Mother "has two older children who were adjudicated dependent and committed to the permanent custody of CCDCFS."

**{¶ 6}** Regarding Father, the agency alleged that he tested positive for cocaine and marijuana in February 2017. In an amended complaint, the agency notified the court that Father was arrested on May 26, 2018, and "is currently incarcerated pending criminal charges for domestic violence, felonious assault, and obstruction of official business." Mother was the victim in the domestic violence incident.

{¶ 7} In July 2018, the children were adjudicated dependent. However, because Mother did not appear for the adjudication hearing, the juvenile court continued the case for disposition.

{¶ 8} On August 7, 2018, the appointed guardian ad litem ("GAL"), Amy Nash, submitted a report in which she recommended that the juvenile court find permanent custody to be in the children's best interests. In the report, the GAL outlined the children's custodial history and referenced Mother's ongoing substance abuse, mental health, and housing issues. Upon consideration of all relevant factors, the GAL opined that neither parent "is able or stable enough to care for these children on a permanent basis, now or in the near future." In rendering her recommendation, the GAL noted that the children were too young to express their wishes.

{¶ 9} On August 10, 2018, the court held a hearing on the agency's dispositional prayer of permanent custody. At the hearing, CCDCFS social worker, Selina Wright ("Wright"), testified that L.W. came into the agency's custody when she was approximately nine months old. S.W. came into the agency's custody at the time of her birth. The children were placed in the agency's custody based on prior adjudications concerning Mother's two older children, D.B. and Da.B. In an effort to facilitate reunification with L.W. and S.W., the agency developed a case plan for Mother that included objectives for mental health treatment, substance abuse services, parenting education, and stable housing.

**{¶ 10}** Regarding Mother's mental health, Wright testified that Mother has a past history of depression and post-traumatic stress disorder. Wright stated that since the agency filed its complaint in December 2017, Mother has actively participated in her mental health services and has been compliant with her required medication. Thus, Wright stated that Mother has complied with the mental health requirements of her case plan.

**{¶ 11}** Wright explained that Mother's case plan included objectives for substance abuse because the agency had concerns with Mother's use of marijuana and alcohol. Wright stated that Mother completed a residential substance abuse program, but failed to complete the recommended intensive outpatient treatment program and aftercare. Wright stated that Mother has participated in the outpatient program on several occasions, but has not successfully completed the program. In addition, Wright testified that Mother has not appeared for her monthly drug screens since April 2018. Accordingly, Wright stated that Mother did not complete her case plan objectives for substance abuse and has not shown "consistent sobriety."

**{¶ 12}** Regarding the case plan's parenting objectives, Wright testified that Mother completed several parenting classes and complied with her parenting case plan objective. Wright stated that Mother's interactions with the children are safe and appropriate. However, Wright testified that she has lingering concerns with Mother's "decision making" and her ability to provide for the children's basic needs. Wright explained that while Mother consistently

visited the children between December 2017 and May 2018, she "stopped attending visitation when Father was arrested." Wright testified that Mother has only visited the children once since June 2018. As a result, the agency removed Mother from the visitation schedule. Wright further testified that since the domestic abuse incident with Father, Mother does not have stable housing and is currently living with an unidentified friend.

{¶ 13} Finally, Wright provided testimony regarding the children's current placement. She stated that L.W. and S.W. have lived together in the same foster home since February 2016 without interruption. Wright testified that she has observed the children in the foster home and believes their needs are being met. Wright described L.W. and S.W. as being "comfortable," "happy," and "well taken care of." Wright stated, however, that the foster parents were not likely to adopt the children because the foster mother is "in her 60s."

{¶ 14} Based on the foregoing circumstances, Wright opined that the agency would not be able to reunify the children with Mother within a reasonable time. She stated that Mother's housing "is unknown and unstable," and that the agency cannot measure Mother's sobriety unless she completes the necessary outpatient drug program and aftercare. During her cross-examination, however, Wright stated that she was aware Mother was working with a governmental agency to obtain housing and social security benefits.

Wright admitted that if Mother was able to receive social security benefits, it "could alleviate some of the concerns as far as basic needs and being able to provide for the children."

{¶ 15} Upon hearing the testimony presented at the hearing, the GAL reiterated her recommendation that permanent custody was in the children's best interests. The GAL emphasized the children's need for permanency and discussed the "emotional roller coaster" they have been subjected to since the time they were removed from their parents' home. The GAL explained that "the girls have three people they call mom" and "they need one home that they are not going to be removed from." To this end, the GAL opined that the foster parents were bonded with the children and were meeting their individual needs.

{¶ 16} With respect to the GAL's interaction with Mother and Father, the GAL testified that the parents were not consistent with their respective case plans. She explained:

> **They work on [their case plan] and then they stop working on it and they work on it and then they stop. It has not been consistent. It seems right before permanent custody trial they start working their case plan, which should have — things keep happening that interfere with their progress. I admit that. Like going to prison. But lately I have not been able to reach Mother, so I don't know her current situation, like I don't think she has a phone. I don't know where she lives. But after almost five years I think their case plan should have been completed and she's had a lot of support from different agencies, Mother has.**

{¶ 17} Accordingly, the GAL opined that Mother and Father have not completed their case plan objectives, as evidenced by their continued substance abuse, housing, and domestic violence issues.

{¶ 18} Following the disposition hearing, the trial court issued separate journal entries terminating Mother's parental rights and ordering L.W. and S.W. to be placed in the permanent custody of CCDCFS. Mother now appeals the trial court's judgment.

## II. Law and Analysis

{¶ 19} In her first assignment of error, Mother argues the trial court's order granting permanent custody to the agency was not based upon sufficient clear and convincing evidence, and was against the manifest weight of the evidence. Mother contends that the termination of her parental rights was "unnecessarily severe" given her efforts to comply with her case plan.

{¶ 20} As this court has routinely stated, we take our responsibility in reviewing cases involving the termination of parental rights and the award of permanent custody very seriously. A parent has a "'fundamental liberty interest' in the care, custody and management" of his or her child, *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and the right to raise one's own child is "'an essential and basic civil right,'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). However, this right is not absolute. It is "'always subject to the ultimate welfare of

the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 8th Dist. Cuyahoga No. 104325, 2017-Ohio-1037, ¶ 29, quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 21} Because termination of parental rights is "'the family law equivalent of the death penalty in a criminal case,'" it is "an alternative [of] last resort." *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14; *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. It is, however, "sanctioned when necessary for the welfare of a child." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7, citing *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994). All children have "'the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re J.B.* at ¶ 66, quoting *In re Hitchcock*, 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Where parental rights are terminated, the goal is to create "a more stable life" for dependent children and to "facilitate adoption to foster permanency for children." *In re N.B.* at ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

{¶ 22} Before a juvenile court can terminate parental rights and grant permanent custody of a child to CCDCFS, it must satisfy the two-prong test set forth in R.C. 2151.414. Pursuant to this division, before a trial court can terminate parental rights and grant permanent custody to a county agency, the court must find

by clear and convincing evidence (1) the existence of any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e), and (2) that granting permanent custody to the agency is in the best interest of the child.

{¶ 23} Clear and convincing evidence is defined as

> that measure or degree of proof which is more than a mere "preponderance of the evidence" but not to the extent of such certainty required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994), fn. 2, citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979 (1987).

{¶ 24} Where clear and convincing proof is required at trial, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof. *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 24, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *Id.*

### 1. First Prong — R.C. 2151.414(B)(1)

{¶ 25} Under the first prong of R.C. 2151.414, the juvenile court must find by clear and convincing evidence that one of the following conditions set forth in R.C. 2151.414(B)(1)(a) through (e) exists:

**(a)** The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

**(b)** The child is abandoned.

**(c)** The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

**(d)** The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**(e)** The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 26} As an initial matter, we note that the trial court determined that the children have been in the temporary custody of a public agency for 12 or more months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). This finding is not challenged and is supported by the record. The time period for R.C. 2151.414(B)(1)(d) is calculated from when the child enters agency custody and the filing of the motion for permanent custody. *In re C.W.*, 104 Ohio St.3d 163, 2004-

Ohio-6411, 818 N.E.2d 1176, ¶ 26.  With the exception of a brief period of time when the children were placed in the legal custody of their paternal grandmother, clear and convincing evidence established that the children had been in the temporary custody of CCDCFS for well over two years at the time the December 2017 complaint was filed.[3]  Accordingly, the trial court could immediately proceed to a determination of whether permanent custody was in their best interest.  *See In re T.H.,* 8th Dist. Cuyahoga No. 100852, 2014-Ohio-2985, ¶ 18 (stating that when R.C. 2151.414(B)(1)(d) applies, the trial court is not required to make any other finding under R.C. 2151.414(B)).

{¶ 27} Nevertheless, the trial court in this case made the alternative finding pursuant to R.C. 2151.414(B)(1)(a) that each child could not be placed with either parent within a reasonable time or should not be placed with either parent.  Mother's argument on appeal is limited to this determination.  Although this court is not required to do so, we address Mother's challenges to the trial court's R.C. 2151.414(B)(1)(a) finding.

{¶ 28} In the event that R.C. 2151.414(B)(1)(a) applies, courts look to the factors set forth in R.C. 2151.414(E) to determine whether a child cannot be placed with a parent within a reasonable time or should not be placed with a parent. These factors include, among others, whether the parent failed continuously and

---

[3] The children were placed in the agency's temporary custody in May 2015.  For clarity, we emphasize that while paternal grandmother was granted legal custody in November 2017, the children were never placed in her *physical* custody.  The children remained in their foster home.

repeatedly to substantially remedy the conditions that had caused the removal of the child (R.C. 2151.414(E)(1)); whether the parent has demonstrated a lack of commitment toward the child by failing to regularly visit or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child (R.C. 2151.414(E)(4)); whether the parent has had parental rights involuntarily terminated with respect to a sibling of the child and has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child. (R.C. 2151.414(E)(11)); and whether the parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child R.C. 2151.414(E)(14). The statute also permits the court to consider "any other factor the court considers relevant." R.C. 2151.414(E)(16).

{¶ 29} Only one of the enumerated factors under R.C. 2151.414(E) is required to exist for the court to make the finding that "the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." *In re Glenn*, 139 Ohio App.3d 105, 113, 742 N.E.2d 1210 (8th Dist.2000); *In re R.M.*, 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14 (the existence of only one factor will support the court's finding that the child cannot be reunified with the parent within a reasonable time).

{¶ 30} In this case, the juvenile court's finding under R.C. 2151.414(B)(1)(a) relied on the factors set forth under R.C. 2151.414(E)(1),(4), (11), (12), and (14). The court stated, in relevant part:

> The Court finds * * * that one or more of the factors in division (E) of section 2151.414 of the Revised Code exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent;
>
> * * *
>
> The Court further finds that following the placement of the child outside the home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.
>
> The parent has demonstrated a lack of commitment towards the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
>
> * * *
>
> The parent has had parental rights terminated with respect to a sibling of the child and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.
>
> The Father is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
>
> The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

{¶ 31} On appeal, Mother argues the record does not support the trial court's conclusion that L.W. and S.W. could not, or should not, be placed with her within a reasonable period of time. She contends that she has substantially completed her case plan objectives and was working diligently with a governmental agency to obtain housing and social security benefits. Thus, Mother submits that "given the efforts [she] has made to rehabilitate herself and remedy the conditions giving rise to the children being placed in CCDCFS custody, the termination of her parental rights was unnecessarily severe."

{¶ 32} We recognize the steps Mother has taken to address her mental health and parenting skills. Unquestionably, Mother has a strong bond with her children and has demonstrated the capacity to interact with L.W. and S.W. in an appropriate and safe manner. However, "[s]ubstantial compliance with a case plan does not mean that the parent has achieved the ultimate goals of the plan or that the parent has substantially remedied the conditions that caused the children to be removed." *In re A.P.*, 8th Dist. Cuyahoga No. 104129, 2016-Ohio-5848, ¶ 19, citing *In re J.B.*, 8th Dist. Cuyahoga Nos. 98566 and 98567, 2013-Ohio-1706, ¶ 139. In this case, the record clearly and convincingly supports the trial court's determination that, notwithstanding Mother's compliance with portions of her case plan, the children could not be placed with her within a reasonable period of time.

{¶ 33} Regarding the relevant R.C. 2151.414(E) factors, it is undisputed that Mother has had her parental rights involuntarily terminated with respect to L.W. and S.W.'s two older siblings. Despite her long history with the agency, Mother has

failed to demonstrate that she can provide a permanent home or care for the health, welfare, and safety of L.W. and S.W. Here, CCDCFS social worker Wright provided extensive testimony detailing the efforts the agency took to reunify the children with Mother and the case plan the agency created to facilitate this objective. Wright testified that although Mother successfully completed portions of her case plan, she failed to remedy the conditions that led to the children's removal by not completing her case plan objectives for substance abuse and stable housing.

{¶ 34} In support of her opinion, Wright testified that Mother failed to complete a necessary intensive outpatient treatment program and failed to appear for required drug screens in the months directly proceeding the dispositional hearing. In addition, Wright testified that Mother's weekly visits with L.W. and S.W. deteriorated significantly following Father's arrest in May 2018. Wright explained that Mother only appeared for one weekly visit "since the end of May [2018]." Because Mother was not making herself regularly available, the agency was forced to remove her from the visitation schedule. Finally, Wright testified at length regarding Mother's inability to obtain consistently stable housing "throughout the history of the case." Wright testified that at the time of the hearing, Mother did not have a place of her own and was living with a friend.

{¶ 35} Collectively, this evidence supports the trial court's finding that Mother failed to remedy the conditions that caused the children to be placed outside the home. Mother's actions also demonstrated a lack of commitment to L.W. and S.W., and showed she was unable to provide them with a safe and permanent home.

Accordingly, we find the record clearly and convincingly supports the court's conclusion that the children could not or should not be placed with Mother within a reasonable time.

### 2. The Juvenile Court's Best Interests Determination

{¶ 36} Having found that the trial court properly concluded that at least one of the R.C. 2151.414(B)(1) conditions applied, we must determine whether the trial court appropriately found by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the children.

{¶ 37} We review a trial court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 38} In determining the best interest of a child, the juvenile court must consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

**(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**

**(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.**

R.C. 2151.414(D)(1). Relevant to the circumstances of this case, R.C. 2151.414(E)(11) provides:

**(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.**

**{¶ 39}** Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000).

**{¶ 40}** In this case, the trial court's judgment entries expressly state that the court considered each of the R.C. 2151.414(D)(1) factors in determining that an award of permanent custody to the agency was in the children's best interests. The court explained its best interest determination at the conclusion of the permanent custody hearing, stating:

[W]hen we get to best interests, you look at the inner-relationship with the children to the parents. * * * I don't think I've ever had a case where a parent has indicated they don't love their children. I don't think that's ever been stated on the record. The love is not enough. If it were, we wouldn't have these cases. There's got to be more than that for these kids. Love, protection, stability, providing a future for them, a present for them, that needs to be paramount.

So when you look at the factors, [Mother and Father] haven't successfully completed their case plan services, can't provide basic needs, neither one at this time, again, a lack of commitment to the children.

Well — it started off as being consistent, but mom hasn't visited in the last – well, let me take that back. She's visited one time in the last two months. There's been no restrictions on mom with regard to her visitation, no physical restrictions or limitations for her, yet she has not met that requirement.

* * *

Parental rights, of course, for mom has been terminated with respect to two siblings of [L.W. and S.W.]. And while the children according to this particular complaint have been in the emergency custody of the Agency for only eight months. If you look at the custodial history, they've been with the Agency all but three months of their lives. One's four, the other one's three. Four going on five, three going on four.

Is there an issue of permanency? You better believe that there's a need for permanency for these children. Now, I know that counsel for the parents are arguing that this may not be the final home for these children, but they're stable. Stability for me is that they are under supervision of the Agency and they're going to be able to provide a safe, not only safe environment for them, but a predictable environment for them. And going to live with mom and dad is unpredictable and those kids should not be exposed to that. That's not fair.

For one they didn't ask to be here. And when they did arrive, parents have the responsibility for ensuring the predictability for their kids in terms of stability, in terms of being able to have a roof over their head, not being exposed to violence, not being exposed to individuals who may be under the influence. Kids don't deserve that.

So based on the Court's arguments as well as the facts that have been introduced in this matter and understanding some of the things that have been reported in the GAL report. The Court still finds that the agency's met its burden of proof with respect to a finding of the children's best interest being permanent custody to the Division of Children & Family Services.

{¶ 41} After careful consideration of the testimony presented at the permanent custody hearing, we find there is competent, credible evidence in the record to support the juvenile court's reliance on the factors set forth under R.C. 2151.414(D) and its conclusion that permanent custody to the agency is in children's best interests.

{¶ 42} As stated, the testimony presented at the hearing demonstrated the breadth of the children's custodial history, which began in May 2015, and their need for immediate permanency. In addition, the agency introduced evidence that Mother previously had her parental rights terminated "with respect to siblings of [L.W. and S.W.]." Regarding the children's current placement, the agency's social worker testified that the children shared a bond with their foster parents and are having their individual needs met. In contrast, the record makes clear that Mother is unable to provide L.W. and S.W. with stability or adequate care. While Mother took necessary steps to improve her mental health and parenting skills, the evidence established that she is still hampered by the conditions that caused the children to be removed from the home. Specifically, Mother has failed to remedy her substance abuse problems and has not demonstrated the capacity to obtain stable, suitable housing. Moreover, the testimony presented at the hearing established that

Mother's visits with the children became inconsistent following Father's arrest in May 2018. For these reasons, the GAL, speaking on behalf of the young children, recommended that the court find permanent custody to be in the children's best interests.

{¶ 43} Collectively, the foregoing evidence supports the trial court's determination that each of the enumerated factors under R.C. 2151.414(D)(1) weigh in favor of permanent custody. Accordingly, we find that the trial court did not abuse its discretion in determining that permanent custody of the children should be awarded to CCDCFS.

{¶ 44} Mother's first assignment of error is overruled.

## A. The Guardian Ad Litem's Report

{¶ 45} In her second assignment of error, Mother argues the trial court erred in conducting the permanent custody hearing just three days after the GAL report was filed in violation of Sup.R. 48 and Loc.R. 18 of the Cuyahoga County Court of Common Pleas, Juvenile Division.

{¶ 46} The role of a guardian ad litem in a permanent custody proceeding is to protect the child's interest, to ensure that the child's interests are represented throughout the proceedings and to assist the trial court in its determination of what is in the child's best interest. *In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398, ¶ 14, citing R.C. 2151.281(B) and Sup.R. 48(B)(1). This is accomplished by the guardian ad litem conducting an investigation of the child's situation and then making recommendations to the court as to what the guardian ad litem believes

would be in the child's best interest.  *In re J.C.*, 4th Dist. Adams No. 07CA833, 2007-Ohio-3781, ¶ 13.

{¶ 47} Sup.R. 48(F) outlines the guardian ad litem's duties when preparing a final report in a juvenile matter.  As relevant here, Sup.R. 48(F)(1)(c) states:

> (1) In juvenile abuse, neglect, and dependency cases and actions to terminate parental rights:
>
> * * *
>
> (c)  Unless waived by all parties or unless the due date is extended by the court, the final report shall be filed with the court and made available to the parties for inspection no less than seven days before the dispositional hearing.

{¶ 48} In turn, Loc.R. 18 requires a guardian ad litem to submit a written report "with the court no less than seven (7) days prior to the final hearing in accordance with Rule 48 of the Rules of Superintendence for the Courts of Ohio or as otherwise ordered by the court."

{¶ 49} As this court and others have recognized, "'Sup.R. 48 provides * * * good guidelines for the conduct of a guardian ad litem in meeting his or her responsibilities in representing the best interest of a child in order to provide the court with relevant information and an informed recommendation.'" *In re C.O.*, 8th Dist. Cuyahoga Nos. 99334 and 99335, 2013-Ohio-5239, ¶ 14, quoting *In re K.G.*, 9th Dist. Wayne No. 10CA16, 2010-Ohio-4399, ¶ 12.  However, the Rules of Superintendence are only "'general guidelines for the conduct of the courts'" and "'do not create substantive rights in individuals or procedural law.'" *In re C.O.* at ¶ 14, quoting *In re K.G.* at ¶ 11.  As such, it has been generally held that a guardian

ad litem's failure to comply with Sup.R. 48 is not, in and of itself, grounds for reversal of a custody determination. *In re C.O.* at ¶ 14; *In re N.B.*, 8th Dist. Cuyahoga No. 105028, 2017-Ohio-1376, ¶ 26; *Miller v. Miller*, 4th Dist. Athens No. 14CA6, 2014-Ohio-5127, ¶ 14-18.

{¶ 50} Likewise, courts are "given latitude" in following their own local rules. As such, enforcement of such rules is generally within the sound discretion of the court. *Citibank, N.A. v. Katz*, 8th Dist. Cuyahoga No. 98753, 2013-Ohio-1041, ¶ 29. "So long as a trial court's failure to comply with or enforce its local rules does not affect due process or other constitutional rights, 'there is no error when, in its sound discretion, the court decides that the peculiar circumstances of a case require deviation from its own rules.'" *Id.*, quoting *Dodson v. Maines*, 6th Dist. Sandusky No. S-11-012, 2012-Ohio-2548, ¶ 47.

{¶ 51} In this case, counsel for Mother and counsel for Father each objected to the GAL report and requested a continuance so that they could properly investigate the findings of the report. Counsel argued the report was not filed in accordance with the court's local rules or the rules of superintendence. Following a brief discussion on the record, the trial court denied the motion to continue, stating that a continuance would be a disservice to the children given their need for permanency. The court further expressed that Mother and Father would have a difficult time demonstrating that they have been "prejudiced by the fact that [the GAL report] was filed three days before" the hearing.

{¶ 52} On appeal, Mother reiterates her argument that the juvenile court erred in proceeding with the permanent custody hearing and granting permanent custody to CCDCFS because the GAL's report failed to comply with Sup.R. 48(F) and Loc.R. 18 of the Cuyahoga County Court of Common Pleas, Juvenile Division. Mother contends she was unable to adequately investigate the GAL's findings because the report was not timely filed.

{¶ 53} This court has previously rejected an argument analogous to the circumstances presented in this case. In *In re M.S.*, 8th Dist. Cuyahoga Nos. 102127 and 102128, 2015-Ohio-1847, the GAL submitted a report in which he recommended that permanent custody be granted to CCDCFS. As in this case, the GAL report was filed just three days before the dispositional hearing. At the dispositional hearing, the parents objected to the GAL's report on the ground that it was not filed seven days before the hearing as required under Sup.R. 48(D) and court's local rules. The parties moved to continue the permanent custody hearing based on the untimely filing. On appeal, the Father reiterated his argument that the trial court erred in proceeding with the permanent custody hearing because the GAL's report was untimely. This court rejected Father's position, stating, in relevant part:

> Although it is undisputed that the GAL report was filed three days before the hearing instead of seven days before the hearing as specified in Sup.R. 48 and Cuyahoga Cty. Juv. Loc.R. 20, there is nothing in the record that suggests that appellant was prejudiced by the GAL's untimely submission of his report. Although appellant claimed that he lacked adequate time to prepare for cross-examination of the GAL, he failed to identify any new or surprising information in the GAL's report

that he was not fully prepared to address. Appellant had the opportunity to review the report before the hearing, an opportunity to cross-examine the GAL regarding his report and recommendation at the hearing and the trial court granted appellant leave to make a motion to continue the proceedings to a second hearing date if he found something surprising in the GAL's report or testimony as the hearing progressed. However, appellant never made such a motion.

* * * Because appellant has not established any prejudice resulting from the delay in the filing of the GAL's report * * *, we find that the trial court did not abuse its discretion in proceeding with the hearing over these objections.

*Id.* at ¶ 38-39.

{¶ 54} After careful review, we find Mother has failed to establish any prejudice resulting from the delay in the filing of the GAL report. As in *In re M.S.*, counsel for Mother had the opportunity to review the report before the hearing and thoroughly cross-examined the GAL regarding her report and recommendation. In fact, counsel's cross-examination proved effective, as the GAL admitted that certain findings rendered in her report were inconsistent with the social worker's testimony. For instance, the GAL conceded that her report inaccurately states that Mother "is currently on probation due to arson charges," as the evidence established that Mother successfully completed her probation in May 2018. In addition, the GAL admitted that although Mother had been inconsistent with her mental health in the past, she had demonstrated consistency with her mental health services since the agency's complaint was filed in December 2017.

{¶ 55} Under these circumstances, it is evident that counsel had adequate time to prepare for the cross-examination of the GAL, and was not surprised by the

information contained in the report or the GAL's testimony during the permanent custody hearing. Because the timing of the report's filing did not preclude Mother from presenting an adequate defense, we find the trial court did not abuse its discretion in proceeding with the permanent custody hearing. *See In re S.S.*, 10th Dist. Franklin No. 17AP-682, 2018-Ohio-1249.

{¶ 56} Mother's second assignment of error is overruled.

{¶ 57} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR