[Cite as *In re M.H.*, 2022-Ohio-1680.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE:  M.H., ET AL.                    :

Minor Children                           :                    No. 111145

[Appeal by D.P., Mother]          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  May 19, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-17-914799 and AD-21-907095

---

### *Appearances:*

The Law Office of R. Tadd Pinkston LLC, and R. Tadd
Pinkston, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

SEAN C. GALLAGHER, A.J.:

{¶ 1}    Appellant-mother, D.P. ("Mother"), appeals the juvenile court's decision terminating her parental rights and granting permanent custody of her minor children, M.H. and M.R.P., to the Cuyahoga County Division of Children and

Family Services ("agency"). Mother raises the following assignment of error for review:

> The trial court erred in its R.C. 2151.414 analysis to the prejudice of Mother in that [the] court's award of permanent custody was against the manifest weight of the evidence.

For the following reasons, we affirm the juvenile court's decision.

**Factual and Procedural History**

{¶ 2} The agency first became involved with Mother in 2016, prior to the births of M.H. and M.R.P. At that time, Mother was raising two boys with their father ("Father"). The agency filed complaints on the boys' behalf and created case plans for Mother and Father that addressed parenting, domestic violence, substance abuse, mental health, and housing.[1] The two brothers were ultimately placed in the legal custody of a paternal aunt, and they are not involved in the current proceedings.

{¶ 3} On September 28, 2017, during the pendency of the boys' cases, M.H. was born to Mother and Father. On September 29, 2017, the agency filed a complaint in Cuyahoga J.C. No. AD-17-914799 for dependency and temporary custody of M.H. On October 2, 2017, the court granted the agency's preadjudicatory motion for temporary custody of M.H. The agency placed M.H. in the custodial care of a foster family with whom M.H. remained throughout the duration of her case. The agency also modified Mother's and Father's case plans to include M.H. On

---

[1] The juvenile court docketed the boys' cases as Cuyahoga J.C. Nos. AD-17-901102 and AD-17-901103.

November 14, 2017, the court appointed counsel for Father and a guardian ad litem ("GAL") for M.H.

{¶ 4} Father did not substantially comply with his case plan and last spoke with an agency social worker in 2017. Father is not a party to this appeal.

{¶ 5} The court adjudicated M.H. dependent on March 6, 2018. On May 2, 2018, the juvenile court granted temporary custody of M.H. to the agency and noted the goal of reunification with Mother.[2] On August 10, 2018, the agency filed a motion to modify temporary custody to permanent custody.

{¶ 6} On March 27, 2020, Mother filed a motion that requested the court grant legal custody of M.H. to her paternal aunt. On September 2, 2020, M.H.'s foster parents filed a motion for legal custody of M.H. The juvenile court denied the foster parents' motion for legal custody on September 8, 2020.

{¶ 7} M.R.P. was born to Mother on March 2, 2021. Mother identified M.R.P.'s father as "Jerome Doe." M.R.P.'s father was not involved in the agency's case plan and was not a party to the underlying action.[3] Due to several factors — the agency's ongoing involvement with Mother since 2016, the prior placement of two of Mother's children with a legal custodian, and the pending action for permanent custody of M.H. — the agency found it was in the best interest of M.R.P. to assume emergency custody of the child within 24 hours of her delivery. The juvenile court

---

[2] The juvenile court's judgment entry was journalized on May 3, 2018.
[3] During the court proceedings, no individual identified himself as M.R.P.'s father and no one submitted DNA evidence to establish paternity of the child. The juvenile court found M.R.P.'s father abandoned the child.

committed M.R.P. to the predispositional temporary custody of the agency on March 5, 2021. The agency placed M.R.P. in the foster home where her older sister, M.H., already resided.

{¶ 8} The juvenile court held a hearing on March 8, 2021, during which it considered the agency's motion for permanent custody of M.H. and Mother's motion for legal custody of M.H. to the paternal aunt. At the start of the hearing, Mother's attorney moved for a continuance of the trial. The basis of the motion was that Mother gave birth to M.R.P. the week before and could not attend the hearing due to illness. The court denied Mother's motion for continuance. Upon consideration of the evidence and testimony, the juvenile court granted the agency's motion to modify temporary custody to permanent custody and thereby terminated the parental rights of M.H.'s Mother and Father. The court denied Mother's motion for legal custody to M.H.'s paternal aunt.

{¶ 9} On March 25, 2021, Mother filed an appeal arguing that the juvenile court abused its discretion when it denied her request for continuance of M.H.'s permanent custody hearing. On August 5, 2021, this court found the juvenile court's denial of Mother's request for continuance constituted an abuse of discretion. *In re M.H.*, 8th Dist. Cuyahoga No. 110396, 2021-Ohio-2686. The trial court's decision was reversed, and the case was remanded for a new hearing on the state's request for permanent custody and Mother's motion for legal custody to paternal aunt.[4]

---

[4] On September 29, 2021, Mother filed a motion for legal custody to M.H.'s paternal aunt or, in the alternative, to M.H.'s maternal aunt. Mother subsequently withdrew the motion regarding the paternal aunt and sought legal custody to the child's maternal aunt.

{¶ 10} On August 18, 2021, the agency filed a complaint in Cuyahoga J.C. No. AD-21-907095 for abuse, dependency, and permanent custody of M.R.P.[5]  On September 7, 2021, Mother filed a motion for legal custody of M.R.P. to the child's maternal aunt.

{¶ 11}  On October 13, 2021, the juvenile court held a hearing on the agency's complaint regarding M.R.P.  Present at the hearing were M.R.P.'s GAL, Mother's attorney, the agency's social worker, and the agency's attorney.  Mother received notice of the hearing but did not participate.  The court denied an oral motion for continuance by Mother's attorney.  The court found that the agency proved the allegations of the complaint by clear and convincing evidence and adjudicated M.R.P. abused and dependent.  The court also found that the return of M.R.P. to her mother was not in the child's best interest.  The court terminated the preadjudicatory temporary custody of M.R.P. to the agency and committed her to the temporary custody of the agency.

{¶ 12} On November 9, 2021, the juvenile court held a hearing in both Cuyahoga J.C. Nos. AD-17-914799 and AD-21-907095 on the agency's prayers for permanent custody of M.H. and M.R.P. to the agency.  Present at the hearing were the children's GAL, Mother's attorney, an attorney for M.H.'s Father, the children's foster parents, the children's maternal aunt via Zoom, two of the agency's social

---

[5] The agency previously filed two complaints on behalf of M.R.P. — Cuyahoga J.C. Nos. AD-21-901727 and AD-21-904479 — but they were not resolved within the statutory timeframe and, therefore, were dismissed.

workers, and the agency's attorney. Mother and Father received notice of the hearing but did not participate. The agency did not recommend returning M.H. or M.R.P. to Mother because of Mother's failure to engage with the children and failure to address ongoing agency concerns including domestic violence, substance abuse, and mental health. Following consideration of the testimony and evidence, the juvenile court terminated Mother's parental rights to M.H. and M.R.P. and committed both children to the agency's permanent custody.[6] The juvenile court also denied Mother's motion for legal custody of M.H. and M.R.P. to their maternal aunt.

{¶ 13} On November 16, 2021, Mother filed an amended motion for legal custody of M.H. and M.R.P. to their maternal aunt pursuant to R.C. 2151.353(A)(3). On December 2, 2021, Mother filed a timely notice of appeal.

**Legal Analysis**

{¶ 14} In her sole assignment of error, Mother argues that the trial court's grant of permanent custody to the agency was against the manifest weight of the evidence.

{¶ 15} A parent has a fundamental interest in the care and custody of her children. *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 20. However, parental rights are not absolute: "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or

---

[6] The juvenile court also terminated Father's parental rights to M.H.

controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979). "By terminating parental rights, the goal is to create 'a more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *In re R.G.*, 8th Dist. Cuyahoga No. 104434, 2016-Ohio-7897, ¶ 21, quoting *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

{¶ 16} The agency may obtain permanent custody of a child in two ways. *In re E.P.,* 12th Dist. Fayette Nos. CA2009-11-022 and CA2009-11-023, 2010-Ohio-2761, ¶ 2. The agency may first obtain temporary custody of the child and then file a motion for permanent custody under R.C. 2151.413. The agency may also request permanent custody as part of its original abuse, neglect, or dependency complaint pursuant to R.C. 2151.353(A)(4).

{¶ 17} Here, the agency obtained temporary custody of M.H. and then filed a motion for permanent custody under R.C. 2151.413. As to M.R.P., the agency requested permanent custody pursuant to R.C. 2151.353(A)(4) as part of its original complaint. Because the agency sought permanent custody for the children pursuant to two different statutes, two different statutory analyses apply to determine whether permanent custody to the agency was supported by the evidence.

{¶ 18} For a motion for permanent custody sought under R.C. 2151.413, such as the motion filed for M.H., a juvenile court must satisfy the two-prong test set forth

in R.C. 2151.414 before it can terminate parental rights and grant permanent custody to the agency. The juvenile court must find by clear and convincing evidence that any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e) apply and that it is in the best interest of the child to grant permanent custody to the agency. *In re R.G.*, 8th Dist. Cuyahoga No. 108537, 2020-Ohio-3032, at ¶ 19-20.

{¶ 19} Clear and convincing evidence has been defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 20} The agency's motion for permanent custody of M.R.P. was filed pursuant to R.C. 2151.353(A)(4) and represents a complaint with an original dispositional request for permanent custody. Under such a scenario, the trial court must find "in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," and further must determine "in accordance with division (D)(1) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child." R.C. 2151.353(A)(4).

{¶ 21} We examine the record to determine whether the juvenile court had sufficient evidence to meet the required degree of proof. "Judgments supported by

competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence." *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, at ¶ 24, citing *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 24, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

{¶ 22} For ease of discussion, we will separately address the statutory frameworks applicable to M.H. and M.R.P.'s cases and whether the trial court's decisions of permanent custody were against the manifest weight of the evidence.

**I. M.H.**

{¶ 23} The juvenile court must find by clear and convincing evidence that one of the following conditions applies:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children

services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1).

{¶ 24} Here, the juvenile court satisfied the first prong of the statutory test by finding that M.H. was in the agency's custody for 12 months or longer for a consecutive 22-month period. R.C. 2151.414(B)(1)(d). Mother does not dispute this finding.

{¶ 25} Once the trial court found that one of the enumerated R.C. 2151.414(B)(1) factors was present, the court then conducted an analysis of the child's best interest. The juvenile court had to find by clear and convincing evidence that it was in M.H.'s best interest to grant permanent custody to the agency. *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, at ¶ 36.

{¶ 26} On appeal, the court reviews a trial court's best interest analysis for an abuse of discretion. *Id.* at ¶ 37. "An abuse of discretion is more than a mere error of law or judgment; it implies that the court's decision was unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 27} To determine the best interests of the children, the trial court considers all relevant factors including, but not limited to, those listed in R.C. 2151.414(D)(1)(a)-(e):

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

Not one factor listed in R.C. 2151.414(D)(1) is given greater weight than any other factor. *In re L.W.* at ¶ 39. Only one of the statutory factors needs to be found in favor of the award of permanent custody. *Id.* The focus of a best interest determination is the child, not the parent. *In re R.G.* at ¶ 28.

{¶ 28} The record reflects that M.H. was born on September 28, 2017. The agency soon thereafter placed M.H. with her foster parents where she remained

throughout this case. M.H's foster parents promote a relationship with M.H.'s two older brothers who are in the legal custody of their paternal aunt. M.H. and her brothers meet monthly to maintain a bond between the family members. M.H. also maintains a relationship with her biological sister, M.R.P., who resides in the same foster home with M.H. The foster parents' son also lives with M.H. and M.R.P. and the record reflects that M.H. developed a positive relationship with him.

{¶ 29} M.H. was four years old at the time of the permanent custody hearing and was not old enough to express her wishes as to custodial placement. Under such a scenario, the juvenile court properly considers the GAL's recommendation as part of the R.C. 2151.414(D)(1) analysis. *In re R.A.*, 8th Dist. Cuyahoga No. 110541, 2021-Ohio-4126, ¶ 52, citing *In re B/K Children*, 1st Dist. Hamilton No. C-190681, 2020-Ohio-1095, ¶ 45. Here, the child's GAL testified that M.H. is well-bonded with her foster parents. He described the foster mother as M.H.'s "heart and soul." The only parents M.H. has known are her foster parents who wish to adopt her.

{¶ 30} While Mother requested the court place M.H. in the legal custody of the child's maternal aunt who resides in Florida, the GAL opposed that suggestion. The GAL was initially concerned about the proposed arrangement when he learned that Mother planned to live with M.H. at the aunt's residence with the intention of Mother regaining custody of M.H. The GAL testified that he spoke with the maternal aunt and he explained that a legal custodian is expected to be the primary caretaker until the child reaches the age of majority. While the maternal aunt voiced to the GAL her understanding and willingness to take on this role for M.H., the GAL

testified that his concerns about the maternal aunt's and Mother's intentions continued. Further, M.H. has never met the maternal aunt and, therefore, no relationship exists between the two. The GAL did not recommend removing M.H. from the only home she has ever known — the home with her foster parents — where she established strong bonds. The GAL recommended permanent custody to the agency.

{¶ 31} The evidence demonstrated that several R.C. 2151.414(D)(1)(a)-(d) factors supported a finding that it was in M.H.'s best interest to grant permanent custody to the agency. Additionally, R.C. 2151.414(D)(1)(e) supported the court's permanent custody decision. R.C. 2151.414(D)(1)(e) requires the court to assess whether any factors under R.C. 2151.414(E) apply in relation to the parents and child. R.C. 2151.414(E)(10) applies where a parent abandons the child. Abandonment is defined in the juvenile court setting as follows:

> a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.

R.C. 2151.011.

{¶ 32} Upon M.H.'s initial placement with the agency, Mother regularly visited with her. However, Mother's visits since August 2019 have been sporadic, with one visit between August 2019 and December 2019. This court recognizes the Covid-19 pandemic may have impacted Mother's ability to visit M.H., but in 2020 she saw M.H. only once on a FaceTime call. In 2021, Mother appeared unannounced

at two sibling visits arranged by M.H.'s foster parents and the legal custodian of M.H.'s brothers. Mother's attorney argues Mother no longer resides in the same county as M.H. and Mother may have had difficulty obtaining transportation to see M.H. In contrast, an agency social worker testified that in May 2021, Mother arrived at the agency within one hour of the social worker's request that Mother report to the agency to complete paperwork. The social worker testified Mother had access to transportation at that time. Because Mother was not present for the hearing, no testimony was presented on this issue on her behalf.

{¶ 33} Regardless of whether Mother had transportation problems, her lack of visitation or contact with M.H. since 2019 constituted abandonment. Father, who had no documented contact with M.H. since 2017, also met the statutory definition of abandonment. A finding of abandonment supports the juvenile court's determination that it was in M.H.'s best interest to terminate Mother's parental rights and place M.H. in the agency's permanent custody.

{¶ 34} The record demonstrates that the juvenile court complied with the statutory requirements of R.C. 2151.414(B)(1) and 2151.414(D) when it determined (1) the evidence showed that M.H. was in the agency's custody for 12 months or longer for a consecutive 22-month period and (2) it was in the best interest of M.H. to place her in the permanent custody of the agency. The juvenile court's findings are supported by clear and convincing evidence.

**II. M.R.P.**

{¶ 35} As part of its original complaint, the agency requested permanent custody of M.R.P. pursuant to R.C. 2151.353(A)(4). The trial court needed to satisfy two statutory requirements before ordering M.R.P.'s placement in the permanent custody of the agency: find that (1) the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent in accordance with R.C. 2151.414(E) and (2) the permanent commitment is in the child's best interest, in accordance with R.C. 2151.414(D)(1). R.C. 2151.353(A)(4).

{¶ 36} Only one of the R.C. 2151.414(E) factors that demonstrate that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent is required to support the juvenile court's finding. *In re L.W.* at ¶ 29. Here, the juvenile court indicated the relevant R.C. 2151.414(E) factors relating to M.R.P. were as follows:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> (2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated,

within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(10) The parent has abandoned the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

The record supports a finding that R.C. 2151.414(E) factors applied to M.R.P.

{¶ 37} The agency argues that Mother did not comply with her case plan regarding substance abuse, mental health, and domestic violence. Prior to M.R.P.'s birth, Mother completed a substance-abuse assessment that resulted in no recommendation for continuing care. The agency still required Mother to submit urine screens; all screens submitted prior to December 2019 were negative. However, in December 2019, Mother failed to submit a requested drug screen and Mother disengaged with the agency's services following that time. At the time of M.R.P.'s birth, Mother tested positive for marijuana; Mother admitted to the consumption of marijuana-laced food product.

{¶ 38} Pursuant to her case plan, Mother initially engaged in mental-health services and was diagnosed with mild depression that did not require medication. In 2019, the agency noted further concerns about Mother's mental health and recommended she obtain a psychiatric evaluation. Mother stopped participating in the county's services and never pursued the requested psychiatric evaluation.

{¶ 39} Mother completed domestic violence programming in 2018. Following completion of the program, the agency had continued concerns that Mother remained in an abusive relationship. The agency observed bruises and marks on Mother's body and holes within her home that appeared to be caused by fists or feet. Mother admitted in June 2019 to ongoing domestic violence and, therefore, the agency recommended Mother reengage for more in-depth counseling. Mother failed to participate in additional domestic violence programming. Mother left her home in Cuyahoga County in 2019 to flee domestic violence.

{¶ 40} At the time of M.R.P.'s birth in March 2021, Mother was not engaged with any agency referral services nor did she reside in Cuyahoga County. The agency could not make referrals outside of Cuyahoga County. Alternatively, the agency provided Mother with contact information for "211," an organization that provides community-based services to address ongoing concerns raised by an individual or the agency. In April 2021, Mother completed an intake for mental health and substance-abuse services with "211" but did not complete an overall assessment to evaluate the needed services. The agency last interacted with Mother in May 2021.

Subsequent attempts by the agency to contact Mother by mail, phone, and email were unsuccessful.

{¶ 41} While Mother's inability to participate in agency services was negatively impacted when she moved outside Cuyahoga County to flee an environment of domestic violence, Mother did not fully engage in the services offered through "211." Further, although Mother completed portions of her case plan, the agency contends that Mother did not benefit from the programming as shown by her lack of consistent engagement with M.R.P., her ongoing problems with domestic violence, and continued use of marijuana. Completion of the terms of a case plan does not preclude the juvenile court from granting permanent custody to the agency if the parent has not substantially remedied the conditions that caused the children's removal. *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶ 25 (8th Dist.), citing *In re J.L.*, 8th Dist. Cuyahoga No. 84368, 2004-Ohio-6024, ¶ 20.

{¶ 42} Additionally, Mother showed a lack of commitment to M.R.P. where Mother failed to regularly support, visit, or communicate with the child. Mother never provided emotional or financial support to M.R.P. Mother did not participate in weekly visitation with M.R.P. as permitted under her case plan. In May 2021, Mother informed an agency worker that she was working a lot and was unavailable to meet with M.R.P. The only documented visits with M.R.P. since her birth in March 2021 occurred when Mother unexpectedly appeared at two meetings arranged between M.R.P.'s foster family and M.H.'s brothers' legal custodian.

{¶ 43} Based upon the foregoing, there is clear and convincing evidence to support the juvenile court's finding under R.C. 2151.414(E) that M.R.P. could not and should not be placed with either parent within a reasonable time.

{¶ 44} The juvenile court next assessed whether permanent custody to the agency was in M.R.P.'s best interest as required under R.C. 2151.414(D)(1).

{¶ 45} M.R.P. has lived with her foster family since birth. She knows no other family. M.R.P. lives with her foster family and her half-sister, M.H. The agency's social workers testified that M.R.P. is a happy baby who is bonded with her foster parents. The foster parents offer a nurturing environment and promote M.R.P.'s relationship with her half-brothers through monthly gatherings.

{¶ 46} Because M.R.P. was approximately seven months old at the time of the permanent custody hearing, her GAL spoke on her behalf. The GAL observed M.R.P. with her foster parents and described a bond between them. Mother requested the court name M.R.P.'s maternal aunt as a legal custodian. For the same reasons stated previously in the best interest analysis for M.H., the GAL recommended placement with the agency rather than the child's maternal aunt.

{¶ 47} The juvenile court found Mother's unwillingness to successfully complete her case plan demonstrated her reluctance to provide food, clothing, shelter, and other necessities to M.R.P. This finding was supported by the record.

{¶ 48} Based upon the foregoing, the record reflects clear and convincing evidence to support the juvenile court's decision that permanent custody to the agency was in M.R.P.'s best interest.

{¶ 49} Mother argues that the agency did not use reasonable efforts to reunite Mother with M.R.P. While the trial court was not required to make a reasonable-efforts determination at the permanent custody hearing, such a finding was made at the earlier hearing on the agency's motion for preadjudicatory temporary custody. *In re A.R.*, 8th Dist. Cuyahoga No. 109482, 2020-Ohio-5005, ¶ 32. The magistrate found the agency made reasonable efforts to prevent the removal of M.R.P. We find that finding was supported by competent, credible evidence and we will not substitute our judgment for it. *In re P.R.*, 8th Dist. Cuyahoga No. 76909, 2002-Ohio-2029, ¶ 15. ("If the record shows some competent, credible evidence supporting the trial court's grant of permanent custody to the county, therefore, we must affirm that court's decision, regardless of the weight we might have chosen to put on the evidence.")

{¶ 50} Additionally, Mother argues that it was in the best interest of M.H. and M.R.P. to be placed with their maternal aunt. While the maternal aunt appeared well-intentioned, the issue before the juvenile court was not whether M.H. should have been placed with her maternal aunt but whether the court should grant the agency's motion for permanent custody. *In re C.H.*, 8th Dist. Cuyahoga No. 103171, 2016-Ohio-26, ¶ 26. The juvenile court was not required to favor the maternal aunt if, after considering the statutory best interest factors, it found permanent custody to the agency was in the child's best interest. *In re E.C.*, 8th Dist. Cuyahoga No. 103968, 2016-Ohio-4870, ¶ 39, citing *In re A.D.*, 8th Dist. Cuyahoga No. 85648,

2005-Ohio-5441, ¶ 12, citing *In the Matter of B.H.*, 5th Dist. Fairfield No. 14-CA-53, 2014-Ohio-5790, ¶ 72.

**{¶ 51}** We find the record supports the juvenile court's decision to grant permanent custody of M.H. and M.R.P. to the agency and, therefore, we overrule Mother's assignment of error.

**{¶ 52}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
EMANUELLA D. GROVES, J., CONCUR