[Cite as *In re L.S.*, 2023-Ohio-3634.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

|                              |     |              |
|------------------------------|-----|--------------|
| IN RE L.S.                   |  :  |              |
|                              |  :  | No. 112822   |
| A Minor Child                |  :  |              |
|                              |  :  |              |
| [Appeal by K.S., Mother]     |  :  |              |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 5, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD23902429

### *Appearances:*

Dawn Snyder, Attorney at Law, LLC, and Dawn Snyder,
*for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Zachary J. LaFleur, Assistant Prosecuting
Attorney, *for appellee.*

MARY EILEEN KILBANE, P.J.:

{¶ 1} Appellant K.S. ("Mother") appeals from the juvenile court's order that terminated her parental rights and granted permanent custody of her minor child, L.S. (d.o.b. 7/26/2022), to the Cuyahoga County Division of Children and Family Services ("the agency" or "CCDCFS"). The child's alleged father, T.P. ("Father"), is

not a party to the appeal.  For the following reasons, we affirm the juvenile court's judgment.

**Factual and Procedural History**

{¶ 2}  At the time of his birth on July 26, 2022, L.S. tested positive for fentanyl and cocaine and was treated for two months in the hospital for withdrawal symptoms and other medical concerns.  On August 24, 2022, the agency filed a complaint for abuse and temporary custody of L.S. to the agency ("initial complaint").  Cuyahoga J.C. No. AD22908412.  On August 31, 2022, Mother executed a contract whereby she agreed to participate in the Family Recovery Court.  On September 7, 2022, the trial court conducted a hearing and committed L.S. to the emergency care and custody of the agency.  On the same date, the hospital discharged L.S. and the agency placed L.S. in foster care for two months.

{¶ 3}  In September and October 2022, Mother submitted two drug screens to the agency that were positive for illicit drugs.  The trial court referred Mother to at least two treatment programs during that same timeframe, but she did not complete the programs.

{¶ 4}  In November 2022, the agency conducted kinship caregiver ("KCAR") investigations to locate an acceptable home where L.S. could be placed.  The agency investigated Mother's mother, but found she was not qualified due to prior criminal history and agency involvement.  The agency subsequently approved placement of L.S. with friends of Father's aunt and referred to the placement as a

fictive kinship placement. L.S. remained in the care of his fictive kinship placement throughout the duration of the case.

{¶ 5} Because the initial complaint was not resolved within the statutory timeframe, the agency filed a second complaint on November 21, 2022, for abuse and temporary custody of L.S. to the agency.[1] Cuyahoga J.C. No. AD22911952 ("second complaint"). In November 2022, the trial court discharged Mother from the Family Recovery Court — and the case was returned to the court's regular docket — due to Mother's noncompliance with the program.

{¶ 6} The second complaint again was not resolved within the statutory timeframe, and therefore, the agency filed a third complaint regarding L.S. on February 24, 2023 ("third complaint").[2] Cuyahoga J.C. No. AD22908412. The trial court's resolution of the third complaint — specifically, the court's grant of permanent custody to the agency — is the basis for this appeal.

{¶ 7} The third complaint alleged that L.S. was an abused child and sought permanent custody to the CCDCFS. The complaint alleged that at the time of his birth, L.S. tested positive for fentanyl and was treated for withdrawal symptoms stemming from Mother's drug use. The complaint alleged Mother suffered from a substance abuse disorder related to cocaine, fentanyl, and alcohol that prevented her from providing a safe home for L.S. The complaint alleged Mother was

---

[1] The initial complaint filed in Cuyahoga J.C. No. AD22908412 was dismissed without prejudice on December 15, 2022.

[2] The second complaint filed in Cuyahoga J.C. No. AD22911952 was dismissed without prejudice on February 17, 2023.

recommended for residential drug treatment but she failed to comply and was not engaged in a treatment program at the time the complaint was filed. The complaint alleged Mother's older child, A.J., was removed from her care and committed to the legal custody of the child's father in part due to Mother's substance abuse issues. Cuyahoga J.C. No. FA19108009. The complaint further alleged that Mother was recently charged in Cuyahoga C.P. No. CR-22-672475-B for corrupting another with drugs, a felony of the second degree, in violation of R.C. 2925.02(A)(3).

{¶ 8} The complaint alleged Father had a substance use disorder that prevented him from providing a safe home for L.S. and that Father was convicted of attempted having weapons while under disability and sentenced to community control. Cuyahoga C.P. No. CR-22-673188-A. The complaint alleged that Father was ordered into residential treatment after he twice violated community-control sanctions, and Father had multiple felony convictions dating back to 2017 and 2019. Cuyahoga C.P. Nos. CR-17-622997-A, CR-19-646347-A, CR-19-641371-A, and CR-19-639013-A. The complaint also alleged that Father failed to establish paternity of L.S. and failed to support, visit, or communicate with L.S. since the child's birth.

{¶ 9} On February 27, 2023, the trial court conducted a hearing on the agency's motion for predispositional custody of L.S. The court heard testimony from Terri Fulton ("Fulton"), an extended social worker with the agency. Mother did not participate at the hearing; the agency was informed prior to the hearing that she was "taking care of a warrant in Medina County." Feb. 27, 2023 hearing, tr. 7. Father

did not participate in the hearing since he was incarcerated at the time, and L.S.'s paternity had not been established. On the date of the hearing, the trial court committed L.S. to the emergency temporary care of the agency.

{¶ 10} On March 20, 2023, an Ohio Department of Job and Family Services case plan was completed. The plan indicated Mother tested positive for cocaine and fentanyl at the time of L.S.'s birth. The plan stated Mother completed an alcohol and other drug assessment and was awaiting the results. The plan stated that Mother denied a substance abuse problem; Mother claimed she used drugs during pregnancy due to her nausea and appetite; and Mother was willing to complete random urine screens. The plan indicated Mother and Father could benefit from parenting classes to learn the importance of a sober caregiver for a child and to gain general parenting knowledge and parenting skills. The plan included establishing L.S.'s paternity, and it was noted that Mother was granted supervised visits with L.S. in his fictive kinship home.

{¶ 11} On the same date in March 2023, the trial court appointed Thomas Kozel as guardian ad litem ("G.A.L.") for L.S. On April 24, 2023, the trial court issued an order that stated Father was imprisoned at a community-based correctional facility in Cleveland, Ohio.

{¶ 12} On May 8, 2023, the trial court conducted an adjudication and disposition hearing at which the following individuals attended: the G.A.L., Father, counsel for Father, counsel for Mother, CCDCFS social worker Fulton, and counsel for CCDCFS. Mother did not attend the hearing nor was any explanation provided

for her absence. Father admitted to the allegations in the amended complaint that applied to him and agreed to permanent custody to the agency. Fulton testified on behalf of the agency.

{¶ 13} Fulton testified that the agency received a referral for L.S. when he was born due to the presence of fentanyl and cocaine in his system. Fulton testified that the agency's concerns stemmed from Mother's substance abuse as evidenced by the drugs present in L.S.'s system and Mother's admission to intravenous drug use the night before she delivered L.S.

{¶ 14} Fulton testified that the agency developed a case plan that was reviewed with both parents. Mother did not express any objections to the case plan, but agreed to the terms and signed the document. The case plan required Mother's completion of drug tests but Mother was unwilling to cooperate:

> FULTON: We've been encouraging [Mother] to do drug screens, which at this point is our only case plan objective for [Mother.] She would tell us that she would go and do drug screens for us. However, she wouldn't. We would speak to her about her not doing them, and she would just always have some type of excuse as to why she wasn't able to go and submit the screen for us.

May 8, 2023 hearing, tr. 22. Fulton testified that Mother completed only two random drug tests over the past nine months in September and October 2022 — both testing positive for illicit drugs — although the agency requested she submit to drug tests almost every week. In September 2022, Mother tested positive for fentanyl, cocaine, alcohol, and norfentanyl, and in October 2022, Mother tested positive for fentanyl, cocaine, and the prescription medication Suboxone. Mother

"would just give [the agency] different random excuses as to why she couldn't comply with our requests." May 8, 2023 hearing, tr. 29. Fulton testified that Mother was initially referred to Recovery Court at the juvenile court where Mother participated for a brief period of time. Due to Mother's lack of participation, she was unsuccessfully discharged from the program. Fulton testified that the agency also referred Mother to a few treatment programs, including Ethan's Crossing, Women's Recovery Center, and Action Recovery, where Mother was unsuccessfully discharged after minimal engagement.

{¶ 15} Fulton testified that Mother is currently involved with MetroHealth's Medication-Assisted Treatment ("MAT") Clinic where Mother submits to drug tests at appointments scheduled two weeks in advance. Fulton testified that Mother last tested positive for fentanyl at the MAT Clinic on February 11, 2023, and all subsequent tests were negative. Fulton testified that in contrast with the agency's random drug testing, Mother has prescheduled appointments with the MAT Clinic where she can ensure she does not have any drugs in her system at the time of those appointments. Fulton testified that the agency did not refer Mother to the MAT Clinic but she learned of the program during her prenatal care. Fulton testified that Mother also received counseling at the MAT Clinic. Fulton testified that she does not believe Mother benefitted from the agency-referred programs or the MAT Clinic. Fulton's opinion was based upon Mother's failure to comply with agency services or requests for drug screens and the lack of any documented sobriety.

{¶ 16} Fulton testified that Mother recently pleaded guilty to a charge of corrupting others with drugs.[3] Fulton also testified that in a prior custody action between Mother and the father of her eight-year-old daughter, A.J., the court designated A.J.'s father the legal custodian and residential parent of the child and granted Mother supervised visitation.

{¶ 17} Fulton testified that Mother regularly participated in weekly supervised visitation with L.S. over the past seven months. During visitation, Mother was engaged and interacted appropriately with L.S. and the infant responded positively to Mother. Fulton testified that Mother resided with her Father and was employed as a house cleaner.

{¶ 18} Fulton testified that L.S. currently resided with the same fictive kinship caregivers with whom he was placed in November 2022. Fulton testified that she observed very positive interactions between L.S. and his fictive kinship caregivers. Fulton stated that L.S. interacted with his fictive kinship caregivers as if they were his mother and father and the fictive kinship caregivers provided more than just L.S.'s basic needs. Fulton testified that the fictive kinship caregivers were interested in the adoption of L.S. if the agency was granted permanent custody.

---

[3] A review of the docket in Cuyahoga C.P. No. CR-22-672475 demonstrates that on April 20, 2023, the trial court stayed all proceedings in Mother's criminal case in which she was charged with corrupting others with drugs and granted Mother's motion for intervention in lieu of conviction. On May 10, 2023, Mother submitted a drug test to the probation department that tested positive for cocaine, opiates, and fentanyl. On June 22, 2023, Mother absconded from inpatient treatment at Ethan Crossing after spending only 24 hours at the facility. On June 26, 2023, the trial court issued a capias for Mother that was pending at the time of this opinion.

Fulton testified that L.S. needed a legally secure placement but Mother was unable to provide a safe and stable permanent home due to her substance abuse issues.

{¶ 19} The G.A.L. drafted a report on April 30, 2023, in which he recommended permanent custody to the agency due to Mother's lack of progress in addressing her substance use disorder. The G.A.L. maintained that recommendation at the time of the custody hearing.

{¶ 20} Pursuant to the trial testimony and exhibits, the trial court adjudicated L.S. to be abused. The trial court further found L.S. could not be placed with either parent pursuant to R.C. 2151.414 (E)(1), (4), and (16) and found it was in L.S.'s best interest to be placed in the permanent custody of the agency. On May 16, 2023, the juvenile court issued a judgment entry that terminated its prior order committing the child to the agency's temporary custody and granted the agency's motion for permanent custody, thereby terminating the parental rights of Mother and Father.

{¶ 21} On June 6, 2023, Mother filed a timely appeal presenting a sole assignment of error for our review:

> Assignment of Error 1: The trial court erred and abused its discretion in finding by clear and convincing evidence that it would be in the best interest of L.S. to permanently terminate the parental rights of Mother and place him in the permanent custody of CCDCFS.

## Legal Analysis

{¶ 22} Mother argues that the trial court erred and abused its discretion when it granted permanent custody of L.S to the agency.

{¶ 23} A parent has a fundamental interest in the care and custody of his children. *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 20. However, parental rights are not absolute: "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979). "By terminating parental rights, the goal is to create 'a more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *In re R.G.*, 8th Dist. Cuyahoga No. 104434, 2016-Ohio-7897, ¶ 21, quoting *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

## A. R.C. 2151.414(B)(1)

{¶ 24} On a motion for permanent custody, a juvenile court must satisfy the two-prong test set forth in R.C. 2151.414 before it can terminate parental rights and grant permanent custody to the agency. The juvenile court must find by clear and convincing evidence that any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e) apply and that it is in the best interest of the child to grant permanent custody to the agency. *In re R.G.*, 8th Dist. Cuyahoga No. 108537, 2020-Ohio-3032, ¶ 19-20.

{¶ 25} Clear and convincing evidence has been defined as "'that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not

to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 26} The juvenile court must find by clear and convincing evidence that one of the following five conditions applies under R.C. 2151.414(B)(1):

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children service agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.
>
> (e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated

an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1).

{¶ 27} Here, the juvenile court addressed the first prong of the statutory test by finding that L.S. could not or should not be placed with either parent within a reasonable time pursuant to R.C. 2151.414(B)(1)(a). To support a finding that a child cannot or should not be placed with a parent within a reasonable time, the trial court looks to R.C. 2151.414(E)'s 15 enumerated factors. The trial court in the instant case found the presence of (E)(1), (E)(4), and (E)(16) factors supported its decision. R.C. 2151.414(E) states, in pertinent part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

(16) Any other factor the court considers relevant.

In support of the (E)(16) factor, the trial court stated the following in its May 16, 2023 judgment entry: "The alleged father made a knowing and voluntary agreement that permanent custody is in the best interest of the child."

{¶ 28} Our review of the record supports the trial court's findings. The agency sought emergency custody of L.S. due to Mother's substance abuse. Pursuant to R.C. 2151.414(E)(1), Mother did not substantially remedy the conditions that resulted in L.S.'s removal from her custody. Prior to filing the third complaint, Mother demonstrated minimal participation in court-ordered treatment and agency-requested drug testing and provided two positive drug tests. In accordance with R.C. 2151.414(B)(1), L.S. entered the agency's temporary custody under the third complaint on November 7, 2022. The testimony related to Mother's actions from November 7, 2022, through the date of the permanent custody hearing on May 8, 2023, demonstrates that Mother never submitted to an agency-requested drug test during that timeframe despite repeated requests for her to do so. On an unspecified date during that timeframe, Mother either resumed or began participation in the MAT Clinic, and the last positive drug test submitted by Mother in that program was in February 2023. However, the drug testing associated with the MAT Clinic was unacceptable to the agency. According to Fulton, Mother knew

in advance the date of the MAT Clinic's scheduled drug tests and could potentially plan her drug use in conjunction with those appointments to ensure any illicit drugs were not in her system when she submitted to the tests. The agency required Mother's compliance with their random drug testing to monitor her drug use but Mother failed to submit to those tests. Mother's actions supported the juvenile court's finding that Mother continuously and repeatedly failed to substantially remedy the conditions that caused L.S.'s removal.

{¶ 29} The juvenile court also found L.S. could not or should not reasonably be placed in Mother's and Father's care because the R.C. 2151.414(E)(4) and (E)(16) factors applied. Because the court need find only one R.C. 2151.414(E) factor applies, we will not address the additional factors. *In re Glenn*, 139 Ohio App.3d 105, 113, 742 N.E.2d 1210 (8th Dist.2000), citing *In re Shanequa H.*, 109 Ohio App.3d 142, 146, 671 N.E.2d 1113 (6th Dist.1996). Our review presents clear and convincing evidence that L.S. could not or should not be placed with his Mother within a reasonable time.

## B. Best Interest of the Child

{¶ 30} Once the trial court found that one of the enumerated R.C. 2151.414(B)(1) factors was present, the court then conducted an analysis of the child's best interest. The juvenile court had to find by clear and convincing evidence that it was in the child's best interest to grant permanent custody to the agency. *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 36. On appeal, the court reviews a trial court's best interest analysis for an abuse of discretion. *Id.* at ¶ 37.

The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463. Such broad discretion applies in a permanent custody hearing. *In re A.W.*, 8th Dist. Cuyahoga No. 109239, 2020-Ohio-3373, ¶ 25.

{¶ 31} Mother argues that the record does not demonstrate placement of L.S. with the agency was in his best interest. Specifically, Mother argues that the evidence showed her consistent weekly visitation with L.S. over the prior seven months and her bond with the child. Mother argues she wants L.S. to be returned to her care and she will be able to provide a legally secure and permanent placement for the child at the conclusion of the agency's temporary custody. The agency contends there was sufficient evidence to support the trial court's finding that it was in L.S.'s best interest to be placed in the agency's permanent custody.

{¶ 32} To determine the best interest of a child, the trial court considers all relevant factors including, but not limited to, those listed in R.C. 2151.414(D)(1)(a)-(e):

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of

a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

Not one factor listed in R.C. 2151.414(D)(1) is given greater weight than any other factor and only one of the statutory factors needs to be found in favor of the award of permanent custody. *In re L.W.* at ¶ 39, quoting *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. The focus of a best interest determination is the child, not the parent. *In re R.G.*, 8th Dist. Cuyahoga No. 104434, 2016-Ohio-7897, at ¶ 28, citing *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, at ¶ 59; *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994).

{¶ 33} The record reflects that in November 2022, L.S. was placed in the care of his fictive kinship caregivers where he remained throughout the pendency of this case. The record shows that L.S. bonded with his fictive kinship caregivers and was doing very well under their care. The testimony was that the fictive kinship caregivers — a working father and stay-at-home mother — wished to adopt L.S.

{¶ 34} L.S. was only four months old when he was placed with his fictive kinship caregivers and nine months old at the time of the custody hearing. A

juvenile court properly considers a G.A.L.'s recommendation on a permanent custody motion — and specifically as part of a best interest analysis — where the child is too young to verbalize his wishes. *In re R.A.*, 8th Dist. Cuyahoga No. 110541, 2021-Ohio-4126, ¶ 52, quoting *In re B/K Children*, 1st Dist. Hamilton No. C-190681, 2020-Ohio-1095, ¶ 45. At trial, the G.A.L. recommended the court grant permanent custody of L.S. to the agency.

{¶ 35} The record also shows that L.S. was in the agency's custody for almost all of his life at the time of trial. "A child's best interests require permanency and a safe and secure environment." *In re Holyak*, 8th Dist. Cuyahoga No. 78890, 2001 Ohio App. LEXIS 3105, 10 (July 12, 2001). L.S. deserved a legally secure, permanent placement where he could be safe, thrive, and have all his needs met. Such a placement could not be accomplished with Mother, who had evaded compliance with the agency's services.

{¶ 36} We recognize that Mother maintained regular supervised visitation with L.S. and included her older daughter and her own father and mother at some of the visits. Yet, these acts were not sufficient to establish it was in L.S.'s best interest to be placed with Mother.

{¶ 37} We find the record provided the trial court with clear and convincing evidence to find permanent custody to the agency, rather than Mother, was in L.S.'s best interest.

{¶ 38} The record demonstrates that the juvenile court complied with the statutory requirements of R.C. 2151.414(B)(1) and 2151.414(D) when it determined

(1) the evidence showed that L.S. could not or should not be placed with Mother within a reasonable time, and (2) it was in L.S.'s best interest to be placed in the permanent custody of the agency. The juvenile court's findings are supported by clear and convincing evidence.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

LISA B. FORBES, J., and
MARY J. BOYLE, J., CONCUR