**[Cite as *In re T.R.*, 2025-Ohio-2531.]**

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE T.R.                                    :
                                              :         No. 114780
A Minor Child                                 :
                                              :
[Appeal by T.B., Mother]                      :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 17, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD21909508

---

### *Appearances:*

Christina M. Joliat, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young and Evan Adeen, Assistant
Prosecuting Attorneys, *for appellee.*

LISA B. FORBES, J.:

{¶ 1} Appellant T.B. ("Mother") appeals from the juvenile court's
December 30, 2024 judgment entry that terminated her parental rights and granted
permanent custody of her minor child T.R. (d.o.b. 12/23/2009), to the Cuyahoga

County Division of Children and Family Services ("the agency" or "CCDCFS").[1] After reviewing the facts of the case and pertinent law, we affirm the juvenile court's judgment.

## I. Factual and Procedural History

{¶ 2} Mother and her family came to the agency's attention based upon reports of excessive physical discipline and verbal abuse as well as lack of supervision. On October 25, 2021, the agency filed a complaint for abuse and temporary custody to CCDCFS and a motion for predispositional temporary custody. The complaint alleged:

(1) Mother lacks the judgment and decision-making skills necessary to provide adequate care for [T.R.]. . . .

(2) Mother engages in excessive and inappropriate physical discipline of [T.R.]. The child[ ] exhibit[s] bruises and scratches on [her] bod[y].

. . .

(3) Father of T.R., [D.R.], was convicted of Burglary and Attempted Burglary. . . .

{¶ 3} The trial court granted the agency's motion for predispositional temporary care and custody on October 25, 2021, and the agency placed T.R. in a foster home. On October 26, 2021, the trial court appointed a guardian ad litem

---

[1] The agency filed a complaint on behalf of siblings T.R. and Ty.B. (d.o.b. 5/23/2011) in Cuyahoga J.C. No. AD21909508 and Cuyahoga J.C. No. AD21909509, respectively, and the two cases were tried together on December 6, 2024. This appeal addresses Mother's parental rights in relation to T.R. only.

("GAL") for T.R., and on October 29, 2021, the trial court appointed counsel for Mother.

{¶ 4} A family case plan was created for Mother in November 2021. According to the case plan, Mother had a history of poor parenting and underlying mental-health issues including a diagnosis of depression and being subject "to child abuse and/or neglect as a child herself." The plan stated Mother's "inappropriate [and] excessive physical discipline of the children" and name calling were "indicative of untreated mental health and/or substance abuse" concerns. It was recommended that Mother receive mental-health, psychiatric, and psychological services; participate in and successfully complete a parenting program; and submit to a drug and alcohol assessment. Mother did not sign the case plan, and it was noted that Mother was "not cooperative" at that time.

{¶ 5} The trial court conducted a hearing on January 18, 2022. Mother participated in the hearing, with counsel, and the GAL for T.R. was present. Mother stipulated to the amended complaint that averred she needed to "engage in parenting classes to learn age appropriate parenting" and to "address appropriate discipline techniques." On February 7, 2022, the court adjudicated T.R. to be dependent, terminated its prior order of predispositional temporary custody, and committed T.R. to the temporary custody of the agency.

{¶ 6} Per the agency's April 14, 2022 semiannual review report ("SAR Report"), Mother agreed to begin parenting and domestic-violence classes, Mother had improved her communication with the agency, and Mother and T.R. had

participated in supervised visits. T.R. was placed with a maternal aunt and required counseling due to a physical altercation with a fellow student. The agency updated the case plan on April 27, 2022, to require Mother to complete a domestic-violence class.

{¶ 7} On August 22, 2022, the agency requested an extension of temporary custody stating Mother was engaged in parenting classes and mental-health counseling and completed a dual-diagnosis assessment. The trial court found Mother had exhibited some progress on her case plan but had made no significant progress in eliminating the issues that required T.R.'s removal from Mother's home. The court granted the motion thereby extending temporary custody until April 23, 2023.

{¶ 8} The agency's October 18, 2022 SAR Report stated Mother submitted to an alcohol and drug assessment that "came back with no recommendations" and Mother's mental-health assessment recommended she receive counseling because of a diagnosis of adjustment disorder with mixed anxiety and depression. The report noted Mother had almost finished her parenting classes and demonstrated "improvement while dealing [with T.R.] by showing better coping mechanisms when [T.R.] act[s] out, and by taking a stronger parental role . . . ." The agency had referred Mother for domestic-violence and anger-management services. The report noted Mother had not contacted Beech Brook, the provider of parenting classes, since August 2022. Mother had two parenting classes to complete, and she was informed she may need to retake the entire parenting course. The agency had

referred Mother and T.R. for family counseling, but no such treatment had been started. T.R. was on a waitlist for individual counseling.

{¶ 9} According to the agency's March 31, 2023 SAR Report, Mother successfully completed parenting classes; was compliant with her mental-health counseling; and was scheduled to begin domestic-violence classes in June. The agency reported Mother had benefitted from the parenting classes. The report stated Mother had lost her housing and applied for new housing with the Cuyahoga Metropolitan Housing Authority ("CMHA"). The report further indicated that T.R. exhibited destructive behavior at home and at school and T.R. had a pending civil lawsuit against her. The report stated T.R. suffered from post-traumatic stress disorder and ADHD and received trauma-based therapy. The report also stated that T.R. voiced her preference to live with Mother.

{¶ 10} On April 21, 2023, the trial court granted a second extension of temporary custody until October 23, 2023. The agency filed a motion to modify temporary custody to permanent custody on September 13, 2023, and provided the affidavit of agency worker Marshae Foy ("Foy") in support of the motion. According to Foy, T.R. had been adjudicated dependent and had been committed to the agency's temporary custody since October 25, 2021. Foy attested that Mother's whereabouts were unknown, Mother was not visiting T.R., Mother abandoned T.R., and Mother failed to engage in domestic-violence services. The affidavit further stated, "Mother's engagement with mental health services and her sobriety are

unknown due to her failure to inform CCDCFS of her change of residence and unwillingness to engage with CCDCFS."

{¶ 11} According to the agency's October 4, 2023 SAR Report, Mother did not complete domestic-violence classes. The report states:

> Mother was previously referred to various Domestic Violence Classes. Agency records indicate that she was registered for [domestic violence] classes through [Beech Brook] in April but did not start due to [Beech Brook] discontinuing their Domestic Violence Program. She was then referred to [Able] Counseling but was unable to start due to not having any medical insurance. She was also referred to Journey but they were not scheduled to start the next [domestic violence] session until 8/2023. The agency then referred her to the Westside Community House and she was slotted to start classes during the 2nd week of July. Mother reported not having the contact number and was provided with the number and contact person again. As of current, she has not contacted the Westside Community House and nor has she engaged in service.

October 4, 2023 SAR Report. According to the SAR Report, Mother had not engaged in counseling or medication management since February 2, 2023, and Mother lacked housing. Mother had "cleared up her warrants," and a charge of child endangerment had been dismissed.[2] The October 2023 SAR report also stated T.R. had been placed with four different relatives since May 2023; T.R. had a pending delinquency case stemming from an alleged assault with a school staff member; and there were concerns that T.R. was smoking marijuana and inappropriately engaging in sexual behavior at the age of 13.

---

[2] Mother was charged in Cleveland M.C. No. 2021-CRB-011653-A, with two counts of child endangerment, and the case was dismissed on September 22, 2023.

{¶ 12} On October 26, 2023, the trial court appointed a GAL for Mother. On December 20, 2023, the trial court conducted an in camera interview of T.R. and appointed counsel for the child.

{¶ 13} The April 3, 2024 SAR Report indicated Mother had previously registered for domestic-violence classes at Beech Brook but failed to follow through with them and Mother was engaged at that time with Moore Counseling for domestic-violence classes. The report stated Mother completed a dual-diagnosis assessment that diagnosed her with severe or moderate alcohol use related to her daily excessive alcohol consumption used "to cope with her children being in [the agency's] care." According to the report, the drug and alcohol counselor recommended that Mother participate in weekly individual counseling, random urine screens, case-management assessment, and MAT ("medication assisted treatment") consultation and Mother had completed three counseling appointments. The report stated Mother had not received mental-health services since February 2023 and there was some question as to whether a lapse of insurance impacted her participation. The report further stated that on January 12, 2024, the agency referred Mother to Moore Counseling for mental-health services; Mother reported to the agency that she received mental-health services from Moore Counseling, but Moore Counseling denied these allegations. The report indicated that Mother had received approval for CMHA housing on March 25, 2024. Regarding T.R., the report stated that in addition to her prior diagnoses, T.R. was diagnosed with oppositional defiant disorder.

{¶ 14} The agency's October 2, 2024 SAR Report indicated Mother was unsuccessfully discharged from Moore Counseling for substance-abuse and mental-health services because Mother refused to engage in the services or submit any urine screens. The report stated Mother was evasive as to whether she received these services from an alternate program. The report further stated that Mother had not verified whether she had moved into CMHA-approved housing.

{¶ 15} T.R.'s GAL filed detailed reports and recommendations with the court on September 21, 2022, March 20, 2023, January 17, 2024, July 9, 2024, and November 27, 2024. In his September 2022 and March 2023 reports, the GAL noted Mother had made progress on her case plan and consistently visited with T.R.

{¶ 16} In his January 2024 report, the GAL stated that T.R.'s supervised visits with Mother, between January and November 2023, were sporadic. The January 2024 report further stated that T.R. had remained in contact with Mother since her removal in the fall of 2021, and T.R. acknowledged that both she and Mother "have bad attitudes" and often "get into it" on the telephone. T.R. also informed the GAL that she did not want to be reunited with Mother. The January 2024 report noted that the GAL experienced great difficulty contacting Mother during the pendency of the case and Mother had not substantially completed her case plan goals over the past two years. The GAL stated T.R.'s need for stability and agency-provided services and concluded permanent custody to the agency was the best way to accomplish these goals.

**{¶ 17}** The July 2024 report stated the GAL made multiple attempts to contact Mother by telephone. The report also indicated Mother experienced a lapse in insurance that resulted in a delay of services. In July 2024, the GAL noted T.R.'s opposition to reunification with Mother and recommended permanent custody to the agency.

**{¶ 18}** The GAL last met with T.R. on November 25, 2024, at which time T.R. stated she did not participate in visitation with Mother, she could not remember the last time she spoke with Mother by telephone, and she was opposed to reunification with Mother. The GAL continued to recommend permanent custody of T.R. to the agency.

**{¶ 19}** On December 6, 2024, a magistrate conducted a hearing on the agency's motion for permanent custody. Mother was not in attendance at the hearing. In attendance at the hearing were GALs for T.R., Ty.B. (T.R.'s sibling), and Mother; Ty.B.'s father; agency-case worker Foy; and counsel for Mother, the agency, T.R., Ty.B., and Ty.B.'s father. Following the hearing, the magistrate issued a journal entry dated December 9, 2024, that stated findings of fact and conclusions of law, ordered T.R. committed to the permanent custody of the agency, and ordered the termination of Mother's and D.T.'s — T.R.'s father ("Father") — parental rights. The journal entry included a notice to the parties and counsel that a party may file written objections to the magistrate's decision within 14 days of the decision. Neither Mother nor the agency filed written objections to the magistrate's decision.

{¶ 20} The trial court issued a December 30, 2024 judgment entry finding, pursuant to the testimony, evidence, and T.R.'s in camera interview, that the agency established by clear and convincing evidence the allegations of the motion for permanent custody. Specifically, the judgment entry stated that the court found, in accordance with R.C. 2151.414(B)(1), that T.R. was abandoned and had been in the agency's temporary custody for more than 12 months in a consecutive 22-month period. The trial court also found the agency provided relevant services to Mother:

> Mother's case plan services included mental health services, substance abuse, domestic violence education, parenting, and safe and appropriate housing. Mother was referred to Moore Counseling, Signature Health, and the Community Collaborative during the history of the case, and [M]other has been non-compliant. Mother did complete domestic violence education in April 2024 through Moore Counseling. Mother completed parenting through [Beech Brook] in March 2023. Mother was referred to Eden House and CMHA for housing. Mother has not verified safe and appropriate housing and has been evasive with the agency. Mother was referred to Moore Counseling for substance abuse and has been non-compliant. Mother has had minimal contact with the agency and the child.

Dec. 30, 2024 judgment entry. The trial court found that no relatives were available to provide care for T.R. and that T.R. could not or should not be placed with either parent within a reasonable time.

{¶ 21} The court considered the R.C. 2151.414(D)(1) factors and found that all of the R.C. 2151.414(D)(2) factors applied and, therefore, determined by clear and convincing evidence that it was in the best interest of T.R. to be placed in the permanent custody of the agency. The trial court terminated its prior order committing T.R. to the temporary custody of the CCDCFS; terminated the parental

rights of Mother and Father; and committed T.R. to the permanent custody of the agency.

{¶ 22} On January 17, 2025, Mother filed a timely appeal, presenting two assignments of error for our review:

> Assignment of Error I: The trial court's order granting permanent custody to the agency was not based upon sufficient clear and convincing evidence, was against the manifest weight of the evidence, and it erred in finding permanent custody to be in the best interest of the child.

> Assignment of Error II: The trial court's denial of Mother's request for a continuance was material and in error.

Father did not appeal the trial court's judgment that terminated his parental rights of T.R. and, therefore, this opinion addresses only the termination of Mother's parental rights.

## II. Legal Analysis

### A. Plain Error and Limited Review

{¶ 23} We initially note that Mother did not file objections to the magistrate's December 9, 2024 journal entry — as permitted under Juv.R. 40(D)(3)(b) — following the permanent custody trial. The juvenile rules require an objecting party to (1) file written objections to a magistrate's decision within 14 days of the decision, (2) state with specificity and particularity all grounds for objection, and (3) support objections to a magistrate's factual finding with a transcript of the evidence submitted to the magistrate or an affidavit of evidence if a transcript is unavailable. Juv.R. 40(D)(3)(b)(i)-(iii). If none of the parties files

written objections, a trial court may adopt the "magistrate's decision unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Juv.R. 40(D)(4)(c).

{¶ 24} Additionally, Juv.R. 40(D)(3)(b)(iv) states that

[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

Juv.R. 40(D)(3)(b)(iv). This rule "embodies the long-recognized principle that the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal." *In re Etter*, 134 Ohio App.3d 484, 492 (1st Dist. 1998), citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). Thus, under Juv.R. 40(D)(3)(b)(iv), parties who do not properly object to a magistrate's decision waive all but plain error. *See State ex rel. Neguse v. McIntosh*, 2020-Ohio-3533, ¶ 9, citing Civ.R. 53(D)(3)(b)(iv); *Tucker v. Hines*, 2020-Ohio-1086, ¶ 6 (10th Dist. ) ("party who fails to timely object to a magistrate's decision is limited by operation of Juv.R. 40(D)(3)(b)(iv) to claims of plain error on appeal"); *In re Z.A.P.*, 2008-Ohio-3701, ¶ 15 (4th Dist.).

{¶ 25} Thus, we review Mother's claimed errors under a plain-error standard. "Plain error is not favored and is only applicable in rare cases where the error 'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial

process itself.'" *In re S.H.*, 2014-Ohio-4476, ¶ 12 (8th Dist.), quoting *S.J. v. J.T.*, 2011-Ohio-6316, ¶ 8 (6th Dist.).

{¶ 26} Moreover, this court is precluded from considering the transcript from the permanent custody trial. Not only did Mother not object to the magistrate's decision, but she also did not file with the trial court the transcript from the permanent custody trial. Mother supplemented the record on appeal with that transcript, but this court is precluded from considering a transcript that the trial court had no opportunity to review. *In re R.O.*, 2025-Ohio-374, ¶ 23 (8th Dist.), citing Juv.R. 40(D)(3)(b)(iv), and *In re A.L.*, 2013-Ohio-5120, ¶ 12 (8th Dist.), citing *State ex rel. Duncan v Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730 (1995). *See In re J.K.*, 2012-Ohio-214, ¶ 14-16 (4th Dist.) (An appellate court may not consider the transcript of the magistrate's hearing when a party fails to file objections to a magistrate's decision and fails to file a hearing transcript with the trial court.). Based upon the unique set of circumstances here, our review and this opinion will not address the December 9, 2024 transcript or any testimony elicited at that hearing.

## B. Permanent Custody

{¶ 27} In her first assignment of error, Mother argues that the trial court's grant of permanent custody of T.R. to the agency was against the manifest weight of the evidence, not supported by clear and convincing evidence, and not in the best interest of the child. Mother argues she substantially engaged in her case plan as demonstrated when she obtained housing, completed domestic-violence and parenting classes, and competed assessments for mental-health and substance-

abuse services. Mother further argues the trial court's extension of the agency's temporary custody in April 2023 demonstrated substantial engagement in her case plan. Mother contends T.R., who suffers from mental illness, prevented reunification because T.R. discontinued visitation with Mother and, in the absence of an agency referral to family counseling, the agency failed to address the parent-child relationship.

### 1. Standard of Review

{¶ 28} A parent has a fundamental interest in the care and custody of her child. *In re L.W.*, 2019-Ohio-1343, ¶ 20 (8th Dist.). However, parental rights are not absolute: "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). "By terminating parental rights, the goal is to create 'a more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *In re R.G.*, 2016-Ohio-7897, ¶ 21 (8th Dist.), quoting *In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.), citing *In re Howard*, 1986 Ohio App. LEXIS 7860, *5 (5th Dist. Aug. 1, 1986).

{¶ 29} "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re M.J.*, 2013-Ohio-5440, ¶ 24 (8th Dist.), citing *In re A.S.*, 2012-Ohio-4893, ¶ 40 (11th Dist.).

{¶ 30} The Ohio Supreme Court recently clarified that, when reviewing a juvenile court's award of permanent custody and termination of parental rights, "the proper appellate standards of review to apply . . . are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties" rather than an abuse-of-discretion standard. *In re Z.C.*, 2023-Ohio-4703, ¶ 18. Regarding whether a juvenile court has sufficient evidence to satisfy the clear-and-convincing-evidence standard, the Ohio Supreme Court has stated:

> "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*In re Z.C.* at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 31} "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when 'the evidence is legally sufficient to support the jury verdict as a matter of law.'" *In re Z.C.* at ¶ 13, quoting *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶ 3. A trial court's judgment may be sustained by sufficient evidence, but an "'appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence.'" *Id.* at ¶ 14, quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12. In reviewing a juvenile court's decision regarding permanent custody on weight-of-the-evidence grounds,

the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*In re Z.C.* at ¶ 14, citing *Eastley.*

### 2. R.C. 2151.414 Factors

{¶ 32} R.C. 2151.414 provides a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re S.C.*, 2018-Ohio-2523, ¶ 20 (8th Dist.), citing R.C. 2151.414(B). The first prong authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the following factors apply:

> (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents;
>
> (b) the child is abandoned;
>
> (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody;
>
> (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or
>
> (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e). In accordance with the second prong of R.C. 2151.414, when any one of the above factors exists, the juvenile court must then analyze

whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D).

### a. R.C. 2151.414(B)(1)(d) — Length of Temporary Custody

{¶ 33} In the instant case, the juvenile court addressed the first prong of the statutory test by finding that, pursuant to R.C. 2151.414(B)(1)(b) and (d), respectively, T.R. was abandoned and had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. We find no plain error in the trial court's application of R.C. 2151.414(B)(1)(d) related to the length of temporary custody.

{¶ 34} Of relevance here, "[t]he time period for R.C. 2151.414(B)(1)(d) is calculated from when the child enters custody of the agency and the filing of the motion for permanent custody." *See In re D.H.*, 2021-Ohio-3821, ¶ 28 (8th Dist.), citing *In re J.C.*, 2018-Ohio-2234, ¶ 29 (8th Dist.), citing *In re C.W.*, 2004-Ohio-6411, ¶ 26. While R.C. 2151.44(B)(1)(d) considers whether the child has been in temporary custody for 12 or more months of a consecutive 22-month period, there is "nothing in the plain language of [R.C. 2151.414(B)(1)(d)] that requires a public agency to wait until a child has been in its custody for [22] months before filing a motion for permanent custody." *In re N.M.P.*, 2020-Ohio-1458, ¶ 23. *See also In re A.M.*, 2025-Ohio-1741, ¶ 33 (8th Dist.). T.R. was committed to the agency's temporary custody in February 2022, and the agency filed for permanent custody on September 13, 2023. "'Only one of the factors must be present for the first prong of the permanent custody analysis to be satisfied.'" *In re S.C.* at ¶ 20, quoting *In re*

*L.W.*, 2017-Ohio-657, ¶ 28 (8th Dist.). Thus, the court satisfied the first prong of the R.C. 2151.414(B)(1) analysis when it found T.R. was in the agency's temporary custody for more than 12 months of a consecutive 22-month period.

### b. R.C. 2151.414(D) — Best Interest of the Child

{¶ 35} Once the trial court found that one of the enumerated R.C. 2151.414(B)(1) factors was present, the court then moved to the second prong of the test and conducted an analysis of the child's best interest. The juvenile court had to find by clear and convincing evidence that it was in the child's best interest to grant permanent custody to the agency. *In re L.W.*, 2019-Ohio-1343, at ¶ 36 (8th Dist.); R.C. 2151.414(D).

{¶ 36} The focus of a best interest determination is the child, not the parent. *In re R.G.*, 2016-Ohio-7897, at ¶ 28 (8th Dist.), citing *In re N.B.*, 2015-Ohio-314, at ¶ 59 (8th Dist.); *In re Awkal*, 95 Ohio App.3d 309, 315 (8th Dist. 1994). To determine the best interest of a child, the trial court considers all relevant factors including, but not limited to, those listed in R.C. 2151.414(D)(1)(a)-(e). Alternatively, the court's determination that all of the R.C. 2151.414(D)(2)(a)-(d) factors apply mandates a finding that "permanent custody is in the best interest of the child, and the court shall commit the child to the permanent custody of [an agency]." R.C. 2151.414(D)(2); *In re A.S.*, 2021-Ohio-3829, ¶ 42 (8th Dist.), citing *In re G.A.*, 2020-Ohio-2949, ¶ 59 (8th Dist.). The R.C. 2151.414(D)(2) factors are as follows:

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

R.C. 2151.414(D)(2)(a)-(d). Here, the trial court found all of the R.C. 2151.414(D)(2)(a)-(d) factors applied so that permanent custody to the agency was in the best interest of T.R.

{¶ 37} We do not find, based on our review of the materials in the trial court's record, that plain error occurred when the trial court found in accordance with R.C. 2151.414(D)(2) that permanent custody was in the best interest of T.R. The trial court made the proper findings and followed the appropriate statutory framework.

{¶ 38} To support a finding that a child cannot or should not be placed with a parent within a reasonable time — as required by R.C. 2151.414(D)(2)(a) — the trial court looks to R.C. 2151.414(E)'s 15 enumerated factors. The trial court in the instant case found the presence of (E)(1) and (4) factors supported its decision. R.C. 2151.414 states, in pertinent part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

. . .

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

{¶ 39} The trial court made the required finding that T.R. could not, or should not, have been placed with Mother within a reasonable time pursuant to the (E)(1) and (E)(4) factors. Moreover, the record demonstrates that the agency created a case plan for Mother that addressed mental health, parenting, domestic violence, and substance abuse. Mother was referred for the various services and completed parenting classes. Mother engaged in mental-health and substance-abuse services but was unsuccessfully discharged from the programs. Mother did

not verify she secured stable housing where she could provide an adequate permanent home for T.R. Mother failed to remedy the problems that initially caused the removal of T.R. or establish that she could provide an adequate home, thereby satisfying the requirements of R.C. 2151.414(D)(2)(a).

{¶ 40} Further, the factors specified in R.C. 2151.414(D)(2)(b), (c), and (d) applied to this case. Where T.R. had been in the agency's custody for more than two years, she no longer qualified for temporary custody:

> The court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section.

R.C. 2151.415(D)(4). Moreover, T.R., who was 14 years old at the time of trial, did not qualify to participate in a planned permanent-living arrangement that requires a child to be at least 16 years of age. R.C. 2151.353(A)(5)(a)-(c). Lastly, the trial court's December 30, 2024 judgment entry found that no relative or interested person was identified as a potential custodian for T.R., and nothing was presented on appeal calling that finding into question. Therefore, the R.C. 2151.414(D)(2) findings mandated that permanent custody was in T.R.'s best interest and that the court commit her to the permanent custody of the agency. *See In re G.A.*, 2020-Ohio-2949, at ¶ 68 (8th Dist.).

{¶ 41} In light of the foregoing facts, we find no plain error with the trial court's order adopting the magistrate's decision, granting the agency permanent custody of T.R., and terminating Mother's parental rights.

{¶ 42} Mother's first assignment of error is overruled.

## C. Motion to Continue

{¶ 43} In her second assignment of error, Mother argues the trial court abused its discretion when it denied her oral motion to continue the custody trial. Specifically, Mother argues it was reasonable for her to not know the trial would proceed as scheduled since there were numerous prior reschedulings of the trial date. Mother also argues she could have testified on her own behalf if the trial court granted her motion to continue.

{¶ 44} Here, Mother provides no citations to case law, statutes, juvenile rules, or local rules in support of her second assignment of error. It is the responsibility of the appellant, not this court, to present an argument on each assignment of error and the reasoning in support of those arguments, including citations to authorities, statutes, and the portions of the record upon which appellant relies. App.R. 16(A)(7). "'It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal.'" *State v. Joziuk*, 2006-Ohio-5421, ¶ 7 (9th Dist.), quoting *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist. 1996).

{¶ 45} Pursuant to App.R. 12(A)(2), this court may disregard an assignment of error where the appellant fails to separately argue the assigned error as required under App.R. 16(A). *Rodriguez v. Rodriguez*, 2009-Ohio-3456, ¶ 4 (8th Dist.), citing App.R. 12(A)(2). Mother fails to present any citation to relevant legal

authority or statutes to support this assigned error.  Accordingly, and pursuant to App.R. 12(A)(2), we decline to address Mother's second assignment of error.

{¶ 46} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
LISA B. FORBES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
MICHAEL JOHN RYAN, J., CONCUR